# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# EASTERN DIVISION

| | |
|---|---|
| TERRY LEE CLIFTON, | ) |
| Plaintiff, | ) |
| v. | ) Civ. No. 1:17-cv-01035-STA-egb |
| BETTYE PATRICK, et al., | ) |
| Defendants. | ) |

## ORDER GRANTING MOTIONS TO DISMISS OF DEFENDANTS
## CHARLES TRAUGHBER, JAMES BEARD, AND JEFF BARNETT

Plaintiff Terry Lee Clifton has filed a complaint for damages pursuant to 42 U.S.C. § 1983 alleging that his due process rights were violated during his 2011 parole revocation proceedings. He has filed suit against now retired Tennessee Board of Parole ("TBOP") Chairman Charles Traughber, TBOP District Director Jeff Barnett, TBOP Deputy District Director James Beard, and TBOP Officers Bettye Patrick and Charlotte Richey.[1] Plaintiff has also sued John Does 1- 10, employees of TBOP or the Tennessee Department of Correction. All defendants are sued in their individual capacities. (Compl. p. 1, ECF No. 1.)

Defendant Traughber has filed a motion to dismiss the complaint against him.[2] (ECF No. 27.) Plaintiff has filed a response to the motion. (ECF No. 33.) Defendants Beard and Barnett have also filed a motion to dismiss (ECF No. 29), and Plaintiff has filed a response to that motion. (ECF No. 34.) Defendants have filed a joint reply to Plaintiff's responses. (ECF No.

---

[1] A default judgment was granted against Defendant Richey on August 10, 2017. (ECF No. 44.)

[2] Defendant Patrick has also filed a motion to dismiss. (ECF No. 42.) That motion remains pending.

39.) For the reasons set forth below, Defendants' motions are **GRANTED**.

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996). A complaint need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action...." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint does not "suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Twombly*, 550 U.S. at 556.

In his complaint, Plaintiff alleges that Defendant Beard, acting upon a complaint made against Plaintiff by an assistant public defender and at the request of Defendant Parole Officers Richey and Patrick, authorized a parole violation warrant which resulted in his defective parole revocation hearing. Plaintiff also alleges that, at the direction of the parole hearing officer who presided over his revocation proceedings, Plaintiff sent written discovery and witness subpoena requests to Defendants Traughber and Barnett in their roles with the TBOP. Plaintiff further alleges that Defendants failed to respond to his requests. Upon conclusion of the hearing, the Board of Parole revoked Plaintiff's parole on April 8, 2011. The Board denied Plaintiff's

administrative appeal on July 6, 2011.[3]

## Immunity

Defendants Traughber and Barnett contend that they are entitled to absolute quasi-judicial immunity from suit because, in denying Plaintiff's requests, they acted in the role of a judicial officer engaged in a judicial function. Defendant Beard contends that authorizing an arrest warrant was also a judicial function. Plaintiff has responded that Defendants were performing an administrative or investigative functions and, therefore, are not immune from suit.

Absolute judicial immunity protects judges from claims based on "judicial act[s] taken within [the] court's jurisdiction." *Cleavinger v. Saxner*, 474 U.S. 193, 199 (1985).[4] Absolute immunity also extends "to certain others who perform functions closely associated with the judicial process," which is generally referred to as quasi-judicial immunity. *Id*. at 200. Quasi-judicial "immunity extends to state parole officers performing functions that are judicial in nature." *Jenkins v. Michigan Department of Corrections*, 2015 WL 5244420 at *3 (E.D. Mich., Sept. 8, 2015). "[A] parole board is entitled to absolute immunity for activities related to 'the execution of parole revocation procedures.'" *Wright v. McClain*, 626 F. Supp. 1073, 1073 (W.D. Tenn. 1986) (citation omitted).

---

[3] In *Clifton v. Easterling*, Civ. No. 1:11-cv-01347, 2016 WL 918049 (W.D. Tenn. Mar. 8, 2016), Plaintiff filed a petition pursuant to 28 U.S.C. § 2254 challenging the decision of the Parole Board revoking his parole on the ground that his due process rights had been violated during the revocation proceedings. The Court granted Plaintiff's petition on March 8, 2016, and ordered the Parole Board to conduct a new revocation hearing. On October 26, 2016, the Parole Board held another hearing and voted in early November to re-release Plaintiff on parole. (ECF No. 101.)

[4] In *Cleavinger*, the Supreme Court held that prison disciplinary committee members were entitled to qualified, rather than absolute, immunity. That decision stressed that hearing officers are not independent and are not akin to professional hearing officers. Instead, they are prison officials and fellow employees of the individuals lodging charges against the inmate. 474 U.S. at 203-04.

To determine whether quasi-judicial immunity applies, the Court does not focus on the individual's "rank or title or 'location within the Government.'" *Cleavinger*, 474 U.S. at 199. (quoting *Butz v. Economou*, 438 U.S. 478, 511 (1978)). Instead, the Court considers whether factors "characteristic of the judicial process" are present, including:

> (a) the need to assure that the individual can perform his functions without harassment or intimidation; (b) the presence of safeguards that reduce the need for private damages actions as a means of controlling unconstitutional conduct; (c) insulation from political influence; (d) the importance of precedent; (e) the adversary nature of the process; and (f) the correctability of error on appeal.

*Id.* at 202 (citing *Butz*, 438 U.S. at 512). "The Court's case law 'suggest[s] an intelligible distinction between judicial acts and the administrative, legislative, or executive functions that judges may on occasion be assigned by law to perform.'" *Flying Dog Brewry, LLLP v. Michigan Liquor Control Com'n*, 597 F. App'x 342, 347 (6th Cir. March 5, 2015) (quoting *Forrester v. White*, 484 U.S. 219, 227 (1988)). Accordingly, the issue before the Court is whether Defendants' acts in question can be considered judicial in nature such that Defendants are entitled to absolute immunity.

Here, as in *Cleavinger*, harassment and retaliation for wrongful decisions are "more than a theoretical possibility," the prospect of damages suits might dissuade officials from serving on a parole board, the parole revocation process is adversarial in nature, and errors may be corrected on appeal. 474 U.S. at 197, 203. In *Cleavinger*, the Court declined to extend absolute immunity to the disciplinary committee members of a prison because of the lack of independence of the committee. The members of the committee were passing judgment on their fellow co-workers, which was subject to review by their superior, the warden. Thus, there existed an "obvious pressure" to favor the prison and their coworkers instead of the inmate. *Id.* at 204. The TBOP is insulated from such "obvious pressure."

Moreover, the factor of "importance of precedent" weighs heavily in Defendants' favor. Despite Plaintiff's argument that Defendants' failure to act on his discovery and subpoena requests was administrative in nature, as noted in *Berry v. Seeley*, 2010 WL 5184883 at *4 (E.D. Tenn. Dec. 15, 2010), "discovery issues . . . [are] at the core of a judge's judicial functions." Additionally, the *Butz* Court described one of the powers of a trial judge as issuing subpoenas. 438 U.S. at 513. *See also* Fed. R. Civ. P. 45 (outlining the federal courts' subpoena power); *Quatkemeyer v. Kentucky Bd. of Med. Licensure*, 506 F. App'x 342, 346 (6th Cir. 2012) (explaining that the "members of the Kentucky Board of Medical Licensure exercise the requisite adjudicatory functioning for quasi-judicial immunity," in part, because they have "authority to issue subpoenas"). Plaintiff has cited no authority for his argument that Defendants' failure to respond to written discovery requests and issue witness subpoenas was administrative or investigative in nature.[5] Defendants' actions involved "basic and integral parts of the judicial function," *Bush v. Rauch*, 38 F.3d 842, 847 (6th Cir. 1994); therefore, Defendants Traughber and Barnett are entitled to absolute quasi-judicial immunity.

Because issuing an arrest warrant is also a judicial function, Defendant Beard has absolute quasi-judicial immunity from suit. *See Foster v. Walsh*, 864 F.2d 416, 417 (6th Cir. 1988) (finding that the issuance of an arrest warrant is a "truly judicial act"); *Wilson v. Blankenship,* 2016 WL 4290766 at *4 (E.D. Tenn. Aug. 15, 2016) (stating that the issuance of an arrest warrant is "a judicial function that is integral to and intertwined with the judicial process"). *C.f. Scotto v. Almenas*, 143 F.3d 105 (2d Cir. 1998) (holding that the parole division supervisor who signed an arrest warrant based on the parole officer's recommendation was protected by

---

[5] Plaintiff's reliance on *Draine v. Leavy*, 504 F. App'x 494 (6th Cir. 2012), is misplaced because *Draine* involved the actions of parole officers in submitting a parole violation report, which the Court found similar to police officers' requesting an arrest warrant. "[Q]uasi-judicial immunity does not apply to functions performed by state parole officers that are not judicial in nature." *Id.*

absolute prosecutorial immunity); *Walrath v. United States*, 35 F.3d 277 (7th Cir. 1994) (holding that, in a *Bivens* action, members of the United States Parole Commission were absolutely immune for issuing a warrant for a parole violation which was a quasi-judicial function).

As noted in *Watts v. Burkhart*, 978 F.2d 269, 274 (6th Cir. 1992), when "the function in question is clearly adjudicative or prosecutorial in nature, other courts have generally taken the position that public policy requires application of the rule of absolute immunity." *See also Collyer v. Darling*, 98 F.3d 211, 221 (6th Cir. 1996), *cert. denied*, 520 U.S. 1267 (1997) (noting that, in extending absolute immunity to those within administrative agencies who perform functions similar to judges and prosecutors, the Supreme Court has recognized that administrative proceedings are usually adversarial in nature and provide many of the same features and safeguards that are provided in court.) Accordingly, Defendants' motions to dismiss on the ground of immunity are granted.

Statute of Limitations

Defendants also contend that Plaintiff's action for damages under § 1983 is barred by the applicable statute of limitations. Plaintiff exhausted his administrative remedies on July 6, 2011, when his appeal of his parole revocation was denied. According to Defendants, the time period to file a § 1983 action expired one year later on July 6, 2012. Plaintiff's complaint was not filed until March 6, 2017. Plaintiff has responded that, under *Heck v. Humphrey*, 512 U.S. 477 (1994), his cause of action under § 1983 for damages resulting from his unconstitutionally defective parole revocation hearing did not arise until the revocation was set aside in his habeas case and a new hearing ordered on March 8, 2016.

It is undisputed that federal courts apply the state personal injury statute of limitations in actions brought under § 1983. *Wilson v. Garcia*, 471 U.S. 261, 280 (1985). The statute of

limitations for personal injury arising in Tennessee and brought under federal civil rights statutes is one year. Tenn. Code Ann. § 28-3-104(a)(3). The statute of limitations is tolled for the period of time during which the plaintiff is exhausting his available administrative remedies. *Surles v. Andison*, 678 F.3d 452, 458 (6th Cir. 2012) (citing *Brown v. Morgan*, 209 F.3d 595, 596 (6th Cir. 2000)). In the present case, the Court must decide whether Plaintiff's § 1983 cause of action accrued when he exhausted his administrative remedies, which would make this action untimely, or when the Court granted his habeas petition under 28 U.S.C. § 2254, which would make the action timely.

Ordinarily, a plaintiff has no cause of action under § 1983 unless and until his conviction or sentence are invalidated by the grant of a writ of habeas corpus. *Heck*, 512 U.S. at 489. "This 'favorable termination' requirement is necessary to prevent inmates from doing indirectly through damages actions what they could not do directly by seeking injunctive relief - challenge the fact or duration of their confinement without complying with the procedural limitations of the federal habeas statute." *Nelson v. Campbell*, 541 U.S. 637, 646-47 (2004) (citing *Muhammad v. Close*, 540 U.S. 749 (2004)). Thus, under *Heck* and its progeny, a state prisoner's § 1983 action is barred, absent prior invalidation of a confinement or its duration, "if success in [the § 1983] action would necessarily demonstrate the invalidity of confinement or its duration." *Wilkinson v. Dotson*, 544 U.S. 74, 81 (2005).

The Sixth Circuit has recognized that *Heck* applies to proceedings that call into question the fact or duration of parole or probation. *See Noel v. Grzesiak*, 96 F. App'x 353, 354 (6th Cir. 2004) (citation omitted). Accordingly, "claims which challenge the revocation of parole are not cognizable under § 1983 until the parole revocation has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such

determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Davis v. McGinnis*, 1999 WL 313857 at *1 (6th Cir. May 5, 1999) (citation omitted). However, in *Dotson v. Wilkinson*, 329 F.3d 463, 472 (6th Cir. 2003), *aff'd*, *Wilkinson v. Dotson*, 544 U.S. 74 (2005), the Sixth Circuit distinguished challenges to parole proceedings, as opposed to the result of the parole hearing, from *Heck* and held that "a challenge to the procedures used during the parole process as generally improper or improper as applied in his case [which] will at best result in a new discretionary hearing the outcome of which cannot be predicted,. . . [is] a challenge cognizable under section 1983. . . . [P]rocedural challenges to parole . . . determinations . . . do not 'necessarily imply' the invalidity of the prisoner's conviction or sentence and, therefore, may appropriately be brought as civil rights actions, under 42 U.S.C. § 1983, rather than pursuant to an application for habeas corpus." *See also Spencer v. Kemna*, 523 U.S. 1, 17 (1998) (noting that *Heck* would bar an action under § 1983 if a plaintiff were seeking damages for reaching the wrong result in his parole revocation hearing rather than using the wrong procedures if his conviction had not been previously invalidated).

> The Sixth Circuit has explained that, in *Wilkinson*,
>
> the Court concluded that the plaintiffs' challenges to parole procedures could proceed under § 1983 because they did not automatically imply shorter sentences. Instead, the best outcome that one of the *Dotson* plaintiffs could obtain was a "new eligibility review, which will speed consideration of a new parole application." [544 U.S.] at 82. And success for the other plaintiff would entitle him "at most" to "a new parole hearing at which Ohio parole authorities may, in their discretion, decline to shorten his prison term." *Id.* Thus, *Dotson* establishes that when the relief sought in a § 1983 claim has only a potential effect on the amount of time a prisoner serves, the habeas bar does not apply.

*Thomas v. Eby*, 481 F.3d 434, 439 (6th Cir. 2007) (footnote and emphases omitted).

In the present case, while *Heck* would have barred Plaintiff from bringing a § 1983 action until his parole revocation was overturned if he had been challenging the fact of his revocation, it did not bar a § 1983 action claiming that his due process rights were violated during the parole

8

revocation proceedings. *See, e.g., Royster v. Imbrogno*, 2017 WL 1365793 at *2 (S.D. Ohio Apr. 14, 2017), *R. & R. adopted*, 2017 WL 2378403 (S.D. Ohio June 1, 2017) (finding that because "Petitioner is not necessarily asking for his immediate release from prison, but only a hearing that is, in his view, free from procedural defects" and "[t]hat type of claim can also be brought under 42 U.S.C. § 1983," his claim accrued on the date that he was denied parole); *Murdock v. Bruce*, 2017 WL 1322075 at *6 (M.D. Tenn. Mar. 24, 2017) (finding that, to the extent the plaintiff challenges "the processes of the parole hearing," the allegations can be made in a § 1983 action because "the logical remedy ... would be a new hearing at which no result would be necessarily implied"); *Horton v. Groat*, 2006 WL 1752393 *2 (W.D. Mich. June 23, 2006) ("Prisoners may challenge the process of parole revocation proceedings, but not the result of those proceedings, under § 1983.") C.f. *Fain v. Morgan,* 255 F. App'x 644 (3rd Cir. 2007) ("Fain asserts, however, because his complaint is challenging the constitutionality of his parole review hearings, not the validity of his parole revocation hearing, his claims do not necessarily imply the invalidity of his confinement. We agree."); *Anyanwutaku v. Moore*, 151 F.3d 1053, 1055-56 (D.C. Cir. 1998) (noting that, when a complaint alleges procedural defects in the parole revocation process, such a challenge is not barred by *Heck*). *See also Smith v. Sampson*, 2010 WL 750195 *2 (E.D. Mich. Mar. 3, 2010) ("The Court notes that a state prisoner may maintain a § 1983 action for procedural challenges to a parole hearing [when] success in the action would not necessarily call for an immediate or speedier release from custody. However, Plaintiff's false and inaccurate information claims go to the propriety of the parole revocation decision itself such that ruling on those claims in Plaintiff's favor would necessarily demonstrate the invalidity of his incarceration.") (citing *Wilkinson* and *Eby*)); *Williams v. Rubitschun*, 2005 WL 3050445 at *2 (W.D. Mich. Nov. 14, 2005) ("Plaintiff's contention is that the Defendants' decision to revoke

parole was against the great weight of the evidence [when] the county prosecutor had not found probable cause to charge Plaintiff with a crime.... If, however, Plaintiff is challenging the procedures used during his parole revocation hearing and is seeking a second hearing using proper procedures, he may proceed under § 1983 pursuant to *Wilkinson*.").

To the extent that Plaintiff contends that Defendants' action were a "continuing violation" of § 1983 which resulted in his not being released until 2016, this contention is without merit. "The Sixth Circuit has previously recognized two distinct categories of continuing violations, namely, those alleging serial violations and those identified with a longstanding and demonstrable policy of discrimination."[6] *Sharpe v. Cureton*, 319 F.3d 259, 266 (6th Cir. 2003) (citations omitted). The first category of continuing violations "cannot be said to occur on any particular day, but occur over a series of days or years." *Id.* at 267. That category is not applicable to the facts of this case because Defendants' alleged acts were discrete and occurred on particular days. Neither is the second category applicable because Plaintiff has not alleged that Defendants' actions were part of a "longstanding and demonstrable policy of discrimination."

Because Plaintiff's allegations are based on the lack of due process afforded him in the parole revocation proceedings rather than the fact or duration of his confinement, i.e., the parole revocation itself, he was not required under *Heck* to file a habeas petition and obtain a favorable result before proceeding under § 1983. Therefore, the statute of limitations for the present action began to run in July 2011, when Plaintiff exhausted his administrative remedies, and this action is barred by the statute of limitations. Defendants' motions are granted on this ground as well as

---

[6] The Sixth Circuit employs the continuing violations doctrine most commonly in Title VII cases and rarely extends it to § 1983 actions. *See, e.g., LRL Properties v. Portage Metro Hous. Auth.*, 55 F.3d 1097, 1106 n. 3 (6th Cir. 1995).

on the ground of immunity.[7]

In summary, the motion to dismiss of Defendant Charles Traughber and the motion to dismiss of Defendants James Beard and Jeff Barnett are **GRANTED**.

**IT IS SO ORDERED.**

          **s/ S. Thomas Anderson**
          S. THOMAS ANDERSON
          CHIEF UNITED STATES DISTRICT JUDGE

          Date:    October 5, 2017.

---

[7] The only allegations against Defendants Traughber, Barnett, and Beard concerning Plaintiff's 2016 revocation hearing is that Beard was unable to produce Plaintiff's parole file because it had been destroyed by the TDOC. (Compl. p. 17 no. 6, ECF No. 1). There is no allegation that these Defendants played any part in the destruction of the file.